IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JORDAN M.,

      **Plaintiff,**

v.                                      Civil Action 2:23-cv-1733
                                         Judge Sarah D. Morrison
                                         Magistrate Judge Kimberly A. Jolson

COMMISSIONER OF
SOCIAL SECURITY,

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Jordan M., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). It is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 8) and **AFFIRM** the Commissioner's decision.

**I.    BACKGROUND**

On October 12, 2020, Plaintiff protectively filed an application for DIB alleging disability beginning April 30, 2020, due to schizoaffective disorder, depression, and post-traumatic stress disorder (PTSD). (R. at 198–202, 227). After his application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a telephone hearing on December 13, 2021. (R. at 29–62). The ALJ denied Plaintiff's application in a written decision on February 2, 2022. (R. at 10–28). When the Appeals Council denied Plaintiff's request for review, that denial became the Commissioner's final decision. (R. at 1–6).

Next, Plaintiff brought this action. (Doc. 1). As required, the Commissioner filed the administrative record (Doc. 7), and the parties briefed the issues. (Docs. 8, 9).

### A. Relevant Hearing Testimony

At the administrative hearing, the ALJ asked Plaintiff about his conditions and how they prevented him from working. Plaintiff replied:

> The easiest way to describe some of it is, with the schizoaffective disorder, it's like being in a crowded elevator full of people even if you're the only person in the room. It's constant yelling and shouting, and severe migraines that can cause me to be a little less tempered then I would like to be. Sometimes I am just snippy tor no reason, and then other times I am just -- it plays off of my depression, where I've had a couple of incidents in the past that have escalated pretty far on the depression scale. I can't stand to be around groups of people, because it -- like, it will play off of that. Honestly, I've had lots of times where I can't tell if someone's actually talking to me, or if it's just in my head.  \*\*\*
>
> And as well as being -- playing into the anxiety. Being surrounded by people is -- makes me feel like I am going to have a panic attack. . . . Another cause of it is when I'm doing a task, and I can, honest to God, be doing a task and then forget that I was doing the task while I'm doing it.

(R. at 42–43).

Plaintiff also testified that his medications include Prozac and Rexulti.  (R. at 44).

And, when asked how he spends a typical day, Plaintiff responded:

> Honestly, my house is pretty run down, so there's always something that I need to fix. But if there's nothing for me to fix, or some -- or I can't do anything until my sister gets home from work, then I typically just listen to my record player. . . . [Plaintiff's grandmother] checks on me to make sure I haven't, like hurt myself or anything.

(R. at 46).

### B. Relevant Medical Evidence

The ALJ also discussed Plaintiff's medical records and symptoms and evaluated the "paragraph B" Criteria as to his mental health impairments as follows:

> In understanding, remembering or applying information, [Plaintiff] has a moderate limitation. [Plaintiff] has at least a high school education. In the relevant past, as discussed more fully below, he has performed semiskilled work. There is evidence in the record [Plaintiff] complains of recent and remote memory difficulties (Exhibit 1F at 51). However, he continues to be capable of performing his activities

2

of daily living including managing his own appointments and medications. In May of 2021, [Plaintiff] is remarked to report having difficulty completing paperwork because it was confusing (Exhibit 4F at 64). Considering the other symptoms discussed below, I find that [Plaintiff] has no more than moderate limitation in this functioning area.

In interacting with others, [Plaintiff] has a moderate limitation. Throughout the record [Plaintiff] is noted to complain of paranoia, self-isolation, self-harm, suicide ideation, and auditory hallucinations (Exhibits 1F; 4F5F). His symptoms are exacerbated by situational and familial stressors. I also notes that [Plaintiff] reports a history of physical abuse, physical neglect, sexual abuse/molestation, domestic violence/abuse, and emotional abuse (Exhibit 4F at 102). He has been diagnosed with PTSD. Other symptoms noted in the record that might interfere with [Plaintiff]'s ability to interact with others are, anger issue, use of alcohol and/or cannabis, difficulty concentrating (Exhibit 1F at 47, 51). Prior to the alleged onset date, [Plaintiff] is noted to complain of inability to be in crowds, being annoyed by customers, not getting along with his siblings, getting into arguments, night terrors, and altercations with his family members (Exhibits 1F; 4F; 5F at 31). During this time, [Plaintiff] is noted to have a diagnosis of alcohol dependence (Exhibit 4F at 121). Additionally, in September of 2019, [Plaintiff] reported being off his medication for a few years (Exhibit 5F at 36). Despite his symptoms he is noted to work third shift at CVS (Exhibit 5F at 39). The evidence appears to suggest that [Plaintiff]'s symptoms have been well managed with medication and counseling considering the reduction of symptoms reported and mental status examinations. Therefore, I find that at worst, [Plaintiff] experiences moderate limitation in this functioning area.

With regard to concentrating, persisting or maintaining pace, [Plaintiff] has a moderate limitation. Within the record, [Plaintiff]'s mental health diagnoses include PTSD, schizoaffective disorder, personality disorder (Exhibits 1F; 4F). He has been prescribed medication to alleviate and manage his symptoms. [Plaintiff] is noted in the record to complain of difficulty concentrating and difficulty sleeping. He is also noted to complain of varying appetite, which may affect his energy levels (Exhibits 1F; 3F; 4F). [Plaintiff] is also remarked to complain of migraine headaches and head pounding (Exhibits 1F at 30). Additionally, in August of 2020, [Plaintiff] reported drinking alcohol daily ([] Exhibits 1F at 15; 4F at 15). Alcohol consumption is noted throughout the record (Exhibits 1F; 4F at 11). There is also evidence of other substance use (see Exhibit 1F at 47). There is mental status examination findings that would suggest that [Plaintiff]'s ability concentrate, persist, or maintain pace are significantly impaired. Additionally, I note that with the record [Plaintiff] is remarked to have above average job attendance (Exhibit 4F at 99). Therefore, considering all the evidence, I find that [Plaintiff] has no more than moderate limitation in this functioning area.

As for adapting or managing oneself, [Plaintiff] has experienced a moderate limitation. Recall above, [Plaintiff] is noted to complain of isolating behaviors. He

3

>reports that he has difficulty leaving the house as well as suicide ideation with more than 300 attempts (Exhibits 1F; 4F). The evidence of record indicate that [Plaintiff] routinely presents with abnormal mood and affect (Exhibits 1F). However, the rest of his mental status examinations are largely normal. Furthermore, [Plaintiff] appears to gain some relief with medication and to have some success in managing his symptoms with counseling (see, for example, Exhibit 3F at 2). As noted above, his symptoms are fairly well controlled but are exacerbated by environmental/familial stressors (see, Exhibit 5F at 39). Despite the relief with medication and counseling, [Plaintiff] is noted to continue to have difficulties with auditory hallucination as well as some suicide ideation. His mood is also remarked to fluctuate (Exhibits 4F at 55). Nonetheless, as noted above, [Plaintiff] continues to be able to perform his activities of daily living and perform repairs around his home (Exhibit 3F at 13). Further, in January of 2021, [Plaintiff] reported that has taken on more responsibility including carrying for his younger brother (Exhibit 3F at 2). Such evidence would indicate rather intact mental functioning. Therefore, I find that the evidence of record would support no more than moderate limitation in this functioning area.

(R. at 17–18).

>\*\*\* The evidence of record suggests that [Plaintiff] has had steady improvement in his symptoms with counseling. Although the evidence of record supports the presence of the symptoms [Plaintiff] claims, the severity of those symptoms as reported by [Plaintiff] are not supported. [Plaintiff]'s representative argues the need for significant limitation in [Plaintiff]'s ability to interact with others. However, such limitations are not supported by the evidence of record. For instance, [Plaintiff]'s counselor is noted in the record to report that [Plaintiff] presented as short and relatively pleasant during the counseling session (Exhibit 1F at 41). Moreover, [Plaintiff]'s self-reports of record indicates that he is capable of maintaining some level of appropriate interaction as he is able to communicate with friends and maintain relationships. Again, [Plaintiff]'s symptoms are exacerbated by situational stressors. Even when his symptoms are exacerbated, they are moderate at best. Further, I also recognizes that the there are several instance of mental health issues in [Plaintiff]'s medical records, which were created or exacerbated by failure to comply with medications (see, Exhibits 1F at 34; 4F at 31; 5F at 19). Again, his most recent mental health records indicate symptoms are largely controlled (see Exhibit 3F at 2). Finally, it should also be noted that [Plaintiff]'s most recent mental health treatment is connected to a court mandate. Since restarting medications and participating in counseling, [Plaintiff]'s treatment records indicate a decline in the number of symptoms [Plaintiff] has as well as steady progress in improving his overall mental health. Recall above, [Plaintiff]'s counselor reported to [Plaintiff]'s probation officer that he has successfully his therapy goals (Exhibit 4F at 93). Such evidence simply does not support the significant limitations in interacting with others as the [Plaintiff]'s representative suggests.

(R. at 21).

### C. The ALJ's Decision

The ALJ found that Plaintiff meets the insured status requirements through December 31, 2025, and has not engaged in substantial gainful activity since April 30, 2020, the alleged onset date. (R. at 15). The ALJ determined that Plaintiff has the following severe impairments: schizoaffective disorder; anxiety disorder; depressive disorder; personality disorder; and post-traumatic stress disorder (PTSD). (*Id.*). Still, the ALJ found that Plaintiff's impairments, either singly or in combination, do not meet or medically equal a listed impairment. (R. at 17).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ concluded:

> [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: can perform simple routine tasks but not at a production rate pace and without strict performance quotas: limited to occasional superficial contact with coworkers and supervisors with "superficial contact" defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as lacking the ability to engage in more complex social interactions such as persuading other people or rendering advice; Can have no interaction with the general public; can tolerate occasional changes to a routine work setting defined as 1-2 per week.

(R. at 18–19).

Relying on the vocational expert's testimony, the ALJ found that Plaintiff is unable to perform his past relevant composite job consisting of a stock clerk/cashier. (R. at 22). Yet, considering his age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff can perform at the medium exertional level, such as a packer, cleaner, and material handler. (R. at 22–23). The ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since April 30, 2020. (R. at 23).

5

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

In his Statement of Errors, Plaintiff contends that the ALJ violated 20 C.F.R. § 404.1520c during his evaluation of the prior administrative medical findings from the state agency psychologists David Dietz, Ph.D. and Irma Johnston, Psy.D. (Doc. 8 at 5–19). More specifically, Plaintiff contends that the ALJ's supportability analysis was incomplete, and consistency was not addressed at all. (*Id.* at 11–12). The Commissioner counters that the ALJ's decision, when considered as a whole, shows that he properly evaluated the prior administrative findings in accordance with the new regulations for evaluating opinion evidence. (Doc. 9 at 5–14).

6

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1) (2012). A claimant's RFC assessment must be based on all the relevant evidence in his or her case file. *Id*. The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.[1] 20 C.F.R. § 404.1513(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." § 404.1520c(c)(1)–(5). Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. § 404.1520c(b)(2).

When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the

---

[1] The regulations define prior administrative findings:

> A prior administrative finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (*see* § 416.1400) in your current claim based on their review of the evidence in your case record . . . .

§ 404.1513(a)(2), (5).

7

more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 416.920c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(2). And although an ALJ may discuss how he evaluated the other factors, he is not generally required to do so. *Id*. If, however, an ALJ "find[s] that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ will] articulate how [he or she] considered the other most persuasive factors . . . ." § 404.1520c(b)(3).

At bottom, the role of the ALJ is to articulate how he considered medical opinions and how persuasive he found the medical opinions to be. *Holston v. Saul*, No. 1:20-CV-1001, 2021 WL 1877173, at *11 (N.D. Ohio Apr. 20, 2021), *report and recommendation adopted*, No. 1:20 CV 1001, 2021 WL 1863256 (N.D. Ohio May 10, 2021). The role of the Court is not to reweigh the evidence, but to make sure the ALJ considered the proper factors and supported his conclusion with substantial evidence. *Id.* at *14.

Here, the ALJ found the state agency psychologists' opinions "merely somewhat persuasive." (R. at 21). At the initial level, Dr. Dietz found Plaintiff had moderate mental limitations in: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. at 66, 68–69). At the reconsideration level, Dr. Johnston affirmed Dr. Dietz's findings. (R. at 76, 78–79). When evaluating the opinions of the state agency reviewing psychologists, the ALJ determined:

> The reviewing psychologists for the Department of Disability Determination reviewed [Plaintiff]'s residual functional capacity based upon their assessment of the evidence of record and without actually examining [Plaintiff]. Consistent with what has been found herein, these reviewers determined that [Plaintiff] has no more

> than moderate limitation in each of the paragraph B criteria areas. They concluded that [Plaintiff] retained the mental residual functional capacity to understand and recall instructions for work that are simple and routine in nature, with tasks that remain reasonably static. Any changes would need to be explained and demonstrated. [Plaintiff] would be capable of performing short cycle work tasks that do not require adherence to strict time or production demands. He can interact on a superficial level with co-workers and supervisors but should not have contact with the general public. [Plaintiff] would need criticism to be delivered in a non-public venue and criticism should be constructive with alternative suggestions explained. Finally, it was determined that [Plaintiff] could adapt to infrequent changes in a relative static work environment (Exhibits 1A; 3A).
>
> I find the opinions of the reviewing psychologists to be merely somewhat persuasive. The mental residual functional capacity found herein is somewhat consistent but not a verbatim adoption of the mental residual functional capacity of the reviewing psychologists. First, I find that reviewing psychologist used vague terms without defining them (for example, superficial contact). Secondly, I find that limiting [Plaintiff] to constructive criticism is not supported by the evidence of record. While evidence prior to the alleged onset period indicates that [Plaintiff] had difficulty interacting with others, he managed to work for quite some time despite not being properly medicated and with uncontrolled mental health symptoms. During the alleged period of disability, [Plaintiff]'s subjective complaints, particularly those that would affect his ability to interact with others, lessened and are noted to be adequately managed with medication, counseling, and medication adherence. The medical records indicate that [Plaintiff] lives in a highly stressful environment and even with exacerbations of his mental health due to stress, he continues to maintain appropriate functioning and interactions with others. Thus, I find that limiting [Plaintiff] to only constructive criticism is unsupported. Nonetheless, I agree that [Plaintiff] does have moderate limitations in the paragraph B criteria areas, which would indicate a severe impairment that would cause some limitation in his mental functional capacity but not to the extent that [Plaintiff] would be considered disabled. As such and in consideration of the reviewing psychologists' medical specialties, Social Security disability programs expertise and extensive experience evaluating Social Security disability cases, I find their opinions to be only somewhat persuasive.

(R. at 20–21).

Plaintiff first contends that the ALJ improperly found the psychologists' opinions only somewhat persuasive because the consultants used vague terms. (Doc. 8 at 11) (*see* R. at 21). However, the ALJ did not outrightly reject the consultants' opinions because of vagueness, but rather chose to convert terms the psychologists used, like "superficial contact," into more specific

9

and vocationally relevant RFC findings. (*See e.g.*, R. at 18 ("[Plaintiff is] limited to occasional superficial contact with coworkers and supervisors with 'superficial contact' defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as lacking the ability to engage in more complex social interactions such as persuading other people or rendering advice[.]")). This was appropriate, and the ALJ did not commit a reversible error. *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides "great weight" to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale."); *Modro v. Comm'r of Soc. Sec.*, 2019 WL 1986522, at *8 (S.D. Ohio May 6, 2019) ("Although the ALJ did not specifically discuss each of Dr. Sarver's conclusions, the ALJ's analysis makes clear that he considered Dr. Sarver's opinion as a whole and converted his findings into vocationally relevant RFC findings.").

Plaintiff next takes issue with three specific limitations opined by the psychologists as part of Plaintiff's mental residual function capacity that the ALJ did not adopt verbatim. (Doc. 8 at 11–12). First, the psychologists opined that because of Plaintiff's moderate limitations in sustaining concentration and persisting, Plaintiff could only "complete short cycle work tasks that do not require adherence to strict time or production demands." (R. at 69, 79). Second, because of Plaintiff's marked or moderate limitations in social interactions, workplace "[c]riticism should not be given in a public venue[.]" (*Id.*). Third, and again because of Plaintiff's marked or moderate limitations in social interactions, workplace criticism "would be better received if constructive and alternatives [were] suggested and explained." (*Id.*). In essence, Plaintiff contends the ALJ did not properly evaluate the opinions because the ALJ failed to discuss each of these limitations specifically with respect to supportability and consistency. (Doc. 8 at 11–19). The Undersigned

10

disagrees.

At the outset, the Undersigned notes the inherent lack of clear delineation between supportability and consistency when an ALJ evaluates the opinion of a reviewer, like a state agency psychologist, who forms her opinion after a holistic review of the medical evidence of record. Consider, for example, a case in which there has been little or no change to the medical evidence of record between the time the reviewer issues her finding and the ALJ conducts a hearing. In that instance, the evidence upon which the reviewer supported her finding—the complete medical record at the time of her finding—would be virtually identical to the evidence with which the opinion is consistent or inconsistent—the complete medical record at the time of the ALJ's hearing. The ALJ is left in a position in which she is unable to consider supportability without simultaneously addressing consistency, and vice versa. A plaintiff might semantically allege error in such a case, saying that the ALJ only addressed consistency because she compared the reviewer's opinion to the entirety of the record. But the ALJ would have still fulfilled the purpose of the regulation: to give a fulsome review to medical opinions and prior administrative findings, paying particular attention both to how the opinions are internally supported and explained, and how they compare to the record as a whole.

Contrast this with a medical opinion rendered by a treating physician. There, supportability and consistency are more clearly distinguished. The physician supports (or not) her opinion with her own treatment notes, objective medical findings, and experience with the plaintiff. Her opinion is consistent (or not) with the entire universe of the medical evidence of record.

Other courts in this Circuit have considered this facet of the supportability/consistency framework. In *Vaughn v. Commissioner of Social Security*, the Western District of Tennessee addressed an allegation that an ALJ had not properly assessed the supportability of opinion

11

evidence provided by a physician acting as a "reviewing specialist[ ] . . . ." No. 20-cv-1119-TMP, 2021 U.S. Dist. LEXIS 134907, at *24 (W.D. Tenn. July 20, 2021). The court found that consistency had sufficiently been addressed by the ALJ, because she explicitly detailed why the opinion was inconsistent with other aspects of the record. *Id.* at *25–27. But the ALJ had not meaningfully discussed supportability. *Id.* at *27–32.

Notably, however, the physician based his opinion on other medical records "he reviewed, which completely encompasse[d] the relevant period of discovery." *Id.* at *30–31. In other words, the physician operated in the manner of a state agency reviewer, conducting a holistic review of the medical evidence of record before rendering an opinion. So, the court determined that while the ALJ had not observed 20 C.F.R. § 404.1520c to the letter, she had:

> achieved the regulations' goal of providing notice to [the plaintiff] of why [the physician's] opinion was not persuasive. [The physician]'s opinion was entirely predicated on a review of [the plaintiff]'s medical history and, when recounting that same medical history, the ALJ identified several instances where [the plaintiff]'s medical records did not support a finding of disability. As such, the ALJ's discussion of [the plaintiff]'s medical history is, in essence, a discussion of whether the evidence [the physician] reviewed could actually support his conclusions. Thus, while not being a direct attack on the supportability of [the physician]'s opinion as contemplated by the regulations, the ALJ's opinion is only one step removed from articulating why she believed the basis for [the physician]'s opinion was faulty, i.e. an explanation of the supportability factor.

*Id.* at *34–35. Accordingly, the court concluded that any error in the assessment of the opinion was harmless and remand was not necessary. *Id.* at *36.

This same harmless-error analysis should apply to an ALJ's decision which clearly discusses the consistency of a state agency reviewer's opinion, when that same opinion was formed upon records which encompassed the relevant period of discovery and the ALJ elsewhere discusses those records in detail. In the present case, the Undersigned finds that the ALJ did his duty to evaluate the state agency psychological consultants' opinions for supportability and consistency. The ALJ evaluated supportability when he compared the opinions as a whole to the record the

consultants had at the time of their review. The ALJ evaluated consistency when he compared the two opinions as a whole against records subsequently created. The ALJ was not required to do more.

In finding the psychologists' opinions only somewhat persuasive, the ALJ first specifically attended to the supportability of the opinion that Plaintiff retains the capacity to only receive constructive criticism. (R. at 21). The ALJ made note that records reviewed by the psychologists showed that Plaintiff "managed to work for quite some time despite not being properly medicated with uncontrolled mental health symptoms." (R. at 21) (*see* R. at 17, citing R. at 546 (February 2019 emergency room record noting Plaintiff worked third shift at CVS during visit for mental health crisis); R. at 18, citing R. at 482 (August 2020 record noting Plaintiff's above average attendance and "good" performance while working at CVS and Walgreens.)). Additionally, the ALJ highlighted the record reflected that Plaintiff's subjective complaints related to his ability to interact with others "lessened" during the alleged period of disability and "are noted to be adequately managed with medication, counseling, and medication adherence." (R. at 21) (*see e.g.*, R. at 65 ("12/9/20 Exam indicates last seen 10/22/20 at which time mood and psychotic symptoms were well controlled and Abilify was discontinued. He is short though[] relatively pleasant . . . The plan is to continue Prozac 20mg daily as mood symptoms are largely stable[.]"), citing R. at 363; R. at 79 ("[Plaintiff] is making progress with his counseling.")). Finally, the ALJ wrote that even though Plaintiff lived in a stressful environment, "he continues to maintain appropriate functioning and interactions with others." (R. at 21) (*see e.g.*, R. at 64 ("He gets along with authority figures fine and has never been fired from problems getting along with others."), citing R. at 243). Therefore, the ALJ was reasonable in rejecting the opinion that Plaintiff should be limited to receiving only constructive criticism in the workplace, as the evidence the psychologists

reviewed demonstrated his ability to work and interact appropriately with others.

The ALJ then considered evidence the psychologists had before them which did not support more significant social interaction limitations generally than what the ALJ found in Plaintiff's RFC. The ALJ highlighted that in December 2020, Plaintiff's "counselor is noted in the record to report that [Plaintiff] presented as short and relatively pleasant during [a] counseling session." (R. at 21, citing R. at 65, 338). The ALJ also noted Plaintiff reported "he is capable of maintaining some level of appropriate interaction as he is able to communicate with friends and maintain relationships." (R. at 21) (*see e.g.*, R. at 242 (December 2020 function report indicating Plaintiff spends time with others in person daily and talks with others on Discord), 348 (August 2020 mental health record wherein Plaintiff describes himself as having "a really good friend group.")). Repeating what he explored elsewhere in the decision, the ALJ also pointed out that the record supports that Plaintiff's "symptoms are exacerbated by situational stressors." (R. at 21) (*see* R. at 17, citing R. at 315 (documenting stressors related to assault charges), 322 (documenting stressors related to family), 326 (documenting stressors related to a friend's death), 330 (documenting stressors related to fighting friends), 341 (documenting stressors related to divorce)). But the ALJ continued that "[e]ven when his symptoms are exacerbated, they are moderate at best." (R. at 21) (*see e.g.*, R. at 65 ("10/22/20 Exam notes he reports depression as 4/10[.]"), citing R. at 414; R. at 70 ("Mental Status exams fail to document significant limitations.")).

The ALJ additionally considered instances when Plaintiff's mental health issues were "created or exacerbated by failure to comply with medications." (R. at 21, citing R. at 331 ("Patient reports that he stopped taking abilify due to stomach pain and is now taking prozac as was prescribed by Dr.")). The ALJ highlighted that Plaintiff's more recent mental health records "indicate [his] symptoms are largely controlled." (R. at 21, citing R. at 363 (January 2021 record

14

reflecting Plaintiff's mood, anxiety, and psychotic symptoms were "largely well controlled.")). Additionally, the ALJ noted that "the evidence of record does not reveal any psychiatric hospitalizations during the alleged period of disability." (R. at 20). Accordingly, it was within the zone of choice for the ALJ to reject more extreme limitations.

Although the ALJ did not use the term "consistency" in his analysis, given the discussion above about how supportability and consistency overlap when an ALJ evaluates the opinions of state agency reviewers, the ALJ's evaluation of the psychological consultants' opinions when compared to the record they reviewed may satisfy the requirements of the regulations by itself. *See* 20 C.F.R. § 404.1520c(b)(2). But the ALJ bolstered his opinion when he made note of the record developed after the psychologists formed their opinions that did not support greater interactional limitations than those included in Plaintiff's RFC. To this end, the ALJ cites to an October 2021 record reflecting Plaintiff's "steady progress in improving his overall mental health" and successful completion of therapy goals. (R. at 21, citing R. at 476 ("[Plaintiff] is successfully using skills developed in therapy and adapting suggestions from therapy into effective, personalized practices. Significant positive change and progress were reported at the individual, couple, and family level . . . . [Plaintiff] is making progress toward readiness for termination/graduation from psychotherapy with successful progress.")). As such, the ALJ could reasonably read the record subsequently developed as not being consistent with level of social interaction limitations opined by the psychologists because Plaintiff displayed considerable improvement in his mental health symptoms throughout the disability period.

Unlike what Plaintiff contends (*see* Doc. 8 at 11–12), the ALJ was not required to go through each limitation individually and discuss why it was not supported by or inconsistent with the record, as long as the ALJ properly evaluated the opinion as a whole. 20 C.F.R. §

15

404.1520c(b)(1) ("We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually."); *see e.g.*, *Spurlock v. Comm'r of Soc. Sec.*, No. 2:20-CV-3981, 2022 WL 23683, at *5 (S.D. Ohio Jan. 3, 2022) ("there is no legal requirement for an ALJ to explain each limitation or restriction he [or she] adopts or, conversely, does not adopt from a non-examining physician's opinion, even when it is given significant weight." (internal citations and quotation marks omitted)), *report and recommendation adopted*, No. 2:20-CV-3981, 2022 WL 742723 (S.D. Ohio Mar. 11, 2022). The ALJ did that here. As discussed above, he properly evaluated the psychological consultants' opinions for supportability and consistency, even if at times that discussion related to Plaintiff's social limitations more generally than Plaintiff would have liked. In sum, the ALJ's analysis of the psychologists' opinions as a whole meets the minimum articulation requirements of the regulations and builds an accurate and logical bridge between the record and his conclusion. *See* 20 C.F.R. § 404.1520c.

Plaintiff might wish "the ALJ had interpreted the evidence differently." *Glasgow v. Comm'r of Soc. Sec.*, No. 2:15-CV-1831, 2016 WL 2935666, at *7 (S.D. Ohio May 20, 2016), *report and recommendation adopted*, No. 2:15-CV-01831, 2016 WL 4486936 (S.D. Ohio Aug. 26, 2016), *aff'd*, 690 F. App'x 385 (6th Cir. 2017). But the law prohibits the Court from re-weighing the evidence and substituting its judgment for the ALJ's. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.")). Because the ALJ properly evaluated and discussed the supportability and consistency of the state agency psychologists' opinions, the

ALJ has satisfied the requirements of the regulations.  *See* 20 C.F.R. § 404.1520c(b)(2).

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 8) and **AFFIRM** the Commissioner's decision.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s).  A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo* and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date:  December 5, 2023  /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE

17